IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Nirin Walls (R49110), ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:21-cv-50418 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Kristina Mershon and Monica Carpenter, ) | |
| ) | |
| *Defendants*. ) | |

**REPORT AND RECOMMENDATION**

For the reasons stated below, it is the Court's report and recommendation that Defendants' request for dismissal of the complaint for failure to exhaust administrative remedies be denied. Any objection to this report and recommendation must be filed by November 28, 2023. *See* Fed. R. Civ. P. 72(b). The failure to file a timely objection may result in the waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989). Plaintiff's "motion for protection order" [119] is denied as moot.

**I. Background**

On October 27, 2021, Plaintiff Nirin Walls, a prisoner in the Illinois Department of Corrections (IDOC), initiated litigation *pro se* pursuant to 42 U.S.C. § 1983 in the Southern District of Illinois, alleging unconstitutional medical care for a urology condition. Dkt. 1; *Walls v. Jeffreys*, No. 21-cv-01350-SMY (S.D. Ill.). Plaintiff alleged, in relevant part, that in June 2020, while incarcerated at Centralia Correctional Center (Centralia), he had blood in his urine. In February 2021, Plaintiff was transferred to Dixon Correctional Center (Dixon). Plaintiff alleges that despite numerous sick call requests related to blood in his urine and pain, he had not received a urologist appointment as of October 2021 when he filed his complaint. Plaintiff also alleged that grievances he submitted while at Dixon went missing due to wrongdoing by Counselor Hussung, who picks up those grievances. Because Plaintiff asserted claims that allegedly occurred while he was incarcerated at Dixon and Centralia, his claims were severed into the instant case for the events occurring at Dixon, and *Walls v. Jeffreys*, No. 21-cv-01369-SPM (S.D. Ill.) for the events occurring at Centralia. Dkt. 7.

In the instant case, the district judge allowed Plaintiff to proceed with a deliberate indifference claim against Healthcare Supervisor Carpenter and a First Amendment retaliation claim against Nurse Practitioner Mershon based on his allegations that: (1) on September 7, 2021, Mershon told him that Carpenter was "tired" of his grievances and would "send [him] out to urinologists when she get ready too;" and (2) on an unspecified date, Mershon stated "that if he involves her name in any law suits that she <u>will kill</u> [him]." Dkt. 26 at 4 (emphasis in original).

Defendants Mershon and Carpenter answered the complaint and have asserted the affirmative defense that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Dkts. 34, 40. Defendants filed briefs in support of dismissal. Dkts. 59, 60. Plaintiff filed a brief in opposition, along with a list of numerous witnesses and exhibits in support of his position. Dkts. 69, 91, 110.

On June 13, 2023, and August 22, 2023, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). During the June hearing, Plaintiff, Dixon Clinical Services Office Coordinator Nicole Benitez, and Administrative Review Board (ARB) chairperson Clayton Stephenson testified. During the August hearing, Dixon Counselors Toby Glenn and Curtis Hussung testified and Plaintiff offered additional testimony. During both hearings, Plaintiff and Defendants submitted numerous exhibits that were admitted into evidence. *See* Dkts. 107, 118.

Following the August hearing, Plaintiff filed a "motion for protection order" directed against counsel for Defendant Carpenter. Dkt. 119. Plaintiff states that defense counsel called his facility to inquire about the timing of Plaintiff's medical writs for offsite medical care and that such information could not be provided due to security concerns. As Plaintiff acknowledges, defense counsel was likely inquiring about Plaintiff's availability for the continued evidentiary hearing pursuant to this Court's order. *See* Dkt. 116. That hearing has since been completed. Accordingly, Plaintiff's "motion for protection order" [119] is denied as moot.

## II. Legal Standard

The Prison Litigation Reform Act (PLRA) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory, and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). "The exhaustion requirement's primary purpose is to 'alert[] the state' to the problem 'and invit[e] corrective action.'" *Turley v. Rednour*, 729 F. 3d 645, 649 (7th Cir. 2013) (quoting *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)).

To exhaust administrative remedies, a prisoner must use "all steps that the agency holds out" and must "do[ ] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Because Plaintiff is housed in an IDOC facility, he must abide by the grievance procedures established by Illinois law, codified in 20 Ill. Admin. Code §§ 504.800, *et seq*. Under those procedures, a prisoner must submit a grievance to his institutional counselor "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the

2

grievance." 20 Ill. Admin. Code § 504.810(a).

Strict adherence to the exhaustion requirements is required. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, "[p]rison officials may not take unfair advantage of the exhaustion requirement" so "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* (citations omitted). To be available as an administrative remedy, the remedy must "be available in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013).

Failure to exhaust is an affirmative defense. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). The burden, therefore, is on Defendants to prove by a preponderance of the evidence that an administrative remedy was available to Plaintiff and that Plaintiff failed to exhaust that remedy. *See id.*; *Hebron v. Baldwin*, No. 17-cv-6254, 2020 WL 757900, at *1 (N.D. Ill. Feb. 14, 2020).

### III. Discussion

Defendants argue that Plaintiff failed to exhaust his administrative remedies before he filed this lawsuit. Plaintiff concedes that he did not complete the grievance process for his claims against Defendants but contends that administrative remedies were not available to him under the PLRA because Dixon officials prevented him from initiating the grievance process. As such, this Court's inquiry is focused on whether Plaintiff had an available administrative remedy at Dixon.

However, the Court notes that despite the narrow issue before it, Defendants have provided almost no evidence to show that Plaintiff failed to pursue available administrative remedies. Plaintiff alleged, since the filing of his complaint and throughout the hearings in this case, that his counselor threw out grievances that correspond to his claims against Defendants Mershon and Carpenter. Moreover, this Court specifically outlined this issue for the parties in its July 13, 2023 order, stating:

> To ensure that the *Pavey* hearing is focused appropriately, the parties are reminded that the sole issue before the Court is whether administrative remedies were unavailable in connection with Plaintiff's claims against Mershon and Carpenter. Defense counsel need not spend time establishing that Plaintiff did not fully exhaust these claims because Plaintiff has already acknowledged that he did not fully exhaust these claims. The parties should, instead, focus on the issue at hand, whether—as Plaintiff claims—Counselors Hussung and/or Glenn threw out grievances that correspond to his claims against Mershon and Carpenter in the late February/early March 2021 timeframe discussed above.

Dkt. 113 at 6.

Nevertheless, Defendants did not elicit testimony from Plaintiff or the other witnesses at the hearings or otherwise provide evidence regarding the availability of the grievance process for Plaintiff. Instead, the Court was left with undisputed evidence that Dixon officials destroyed or

3

mishandled Plaintiff's grievances related to his instant claims and when Plaintiff brought this issue to the attention of Dixon officials, they failed to investigate it.

With this in mind, the Court will not address all of the testimony provided at the hearings in this case because much of it does not relate to the issue at hand. Instead, the Court will focus on the evidence relating to whether the grievance process was available to Plaintiff in connection with his claims against Defendants Mershon and Carpenter.

**A. Evidence at the Hearings**

During the June hearing, defense counsel called Dixon Clinical Services Office Coordinator Nicole Benitez to testify. Benitez testified she logs, assigns, and tracks all grievances submitted by prisoners at Dixon. The counselors at Dixon collect grievances from the grievance boxes and deliver them to her. She stamps the grievances with the date they were received and an assigned grievance number. She testified that her records did not reflect any grievances from Plaintiff that correspond to the claims in this case. Defense counsel also called ARB chairperson Clayton Stephenson, who similarly testified that his review of the ARB's records did not reveal any appeals that correspond to the claims in this case.

Plaintiff testified that he was transferred to Dixon in February 2021. He submitted two grievances in late February or early March 2021 that went missing. One grievance concerned Defendant Carpenter's purportedly retaliatory refusal of medical care and the second concerned Defendant Mershon's purported death threat. In support, Plaintiff pointed to Grievance No. 211109 dated March 18, 2021, where he complained that he submitted several grievances to the grievance box in housing unit 43 that went missing. Dkt. 105-6 at 92–95. In his grievance, Plaintiff requested camera footage for the second shift in housing unit 43 from March 1 through March 4, 2021, noting that he held his grievances up to the camera outside of his cell before submitting them. Plaintiff's grievance was denied as untimely because Plaintiff failed to include a date of the incident being grieved. Plaintiff testified that the camera footage would have confirmed that he submitted grievances corresponding to his claims in this case.

During the August hearing, Plaintiff called Dixon Counselors Toby Glenn and Curtis Hussung and offered additional testimony himself. Plaintiff first questioned Glenn about Grievance No. 211109 dated March 18, 2021, where Plaintiff requested camera footage from March 1 through March 4, 2021. Glenn provided the counselor's response to the grievance on April 6, 2021, stating: "Offenders cannot grieve the grievance process. Grievance will not be processed any further per DR504. No date of an alleged incident." Dkt. 105-6 at 94. Both the Grievance Officer and the Warden upheld the denial. Dkt. 105-6 at 92. Glenn testified that he rejected the grievance because prisoners cannot grieve the grievance process and there was no date of an alleged incident in the body of the grievance. He agreed, however, that a prisoner may file a grievance claiming that prison officials threw away a prior grievance from the grievance box.

Plaintiff also questioned Glenn about Grievance No. 211410, dated April 6, 2021, which Plaintiff prepared when he was in restricted housing and Glenn was his counselor. Dkt. 105-6 at

26–28. Plaintiff's grievance complained of Glenn's refusal to take a grievance from him in his cell and 8 grievances that were missing as of April 6, 2021. During the hearing, Plaintiff stated that three of those grievances were related to Dixon, while the others were related to Centralia.

Glenn testified that he did not recall this interaction with Plaintiff. He testified, however, that counselors collected grievances from the grievance boxes in each housing unit or from a prisoner directly when in restrictive housing. He would log grievances that he picked up before taking them to the grievance office. Staff there would log them, assign grievance numbers, and direct them to the appropriate staff member for processing. If a grievance did not have a number, it meant the grievance did not make it to Glenn because he would have logged it and delivered it to the grievance office, where it would have received a number by Benitez.

In response to questions by defense counsel, Glenn testified that he could not recall intentionally misplacing a grievance from Plaintiff, but he would not have done this as it could cause him to lose his job. According to Glenn, it was possible that Plaintiff submitted grievances related to the claims in this case, but he could not recall because Plaintiff submitted many grievances each week.

Plaintiff next called Counselor Hussung. Hussung testified that he was a counselor in Plaintiff's housing unit, but he could not recall if he was assigned in early March 2021. He vaguely recalled Plaintiff but did not recall Plaintiff complaining about missing grievances. Defense counsel declined to question Hussung.

Plaintiff testified again that he placed at least two grievances about Defendants Mershon and Carpenter corresponding to this case into a grievance box in his housing unit. When Plaintiff had not heard back, on March 18, 2021, he followed up by filing Grievance No. 211109. Plaintiff testified that the camera footage would have shown that he submitted those grievances in the grievance box on March 1, 2, 3, or 4, 2021. Plaintiff opined that because these grievances went missing after he placed them in the collection box, Hussung—who was responsible for collecting grievances from the box in Plaintiff's housing unit—must have mishandled them.[1] Defense counsel declined to question Plaintiff.

**B. Analysis**

Defendants' argument that Plaintiff failed to exhaust his administrative remedies hinges on whether Plaintiff had an available remedy. The grievance process at Dixon required Plaintiff to submit a grievance to his counselor "within 60 days after the discovery of the incident, occurrence,

---

[1] In closing argument Plaintiff referenced the failure of Counselor Glenn, rather than Counselor Hussung, to collect and process his grievances from the grievance box in March 2021. Arguments, however, are not evidence. *See*, *e.g.*, *Black v. Wrigley*, 997 F.3d 702, 711 (7th Cir. 2021). Despite this modest inconsistency, the evidence established that Counselor Glenn was Plaintiff's counselor when he was in restricted housing and could not directly access a grievance box. In light of Plaintiff's status as a *pro se* litigant, the Court finds Plaintiff' reference to Counselor Glenn was an inadvertent misstatement rather than a change in his testimony.

or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a).

Plaintiff claims that the conduct underlying his complaint against each Defendant in this case took place around February 2021. *See* Dkt. 113.[2] Plaintiff testified that he submitted at least two grievances corresponding to these claims in February or March 2021 that went missing. Plaintiff argues that Counselor Hussung must have mishandled these grievances since they went missing after he placed them in the grievance box in his housing unit, which Hussung was tasked with emptying.

The Court finds Plaintiff's testimony that he submitted grievances in March 2021 corresponding to his claims in this case to be credible given his demeanor and the consistency of this testimony with his March 18, 2021 grievance, asserting that camera footage would have shown he submitted those grievances in the grievance box on March 1, 2, 3, or 4, 2021. *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) ("At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility."); *Davis v. Francis*, No. 07-CV-0693-MJR, 2009 WL 4894593, at *2 (S.D. Ill. Dec. 11, 2009) ("[P]laintiff's demeanor and the detailed way in which he testified were indicative of truthfulness."). Additionally, although the hearing was broken into two sections more than two months apart, Plaintiff's testimony about his missing grievances was generally consistent. It was also consistent with the allegations in his complaint that was filed in October 2021. *See* Dkt. 1, at 16.

Moreover, Defendants have not brought forth any evidence contradicting Plaintiff's testimony that he submitted at least two grievances in March 2021 that went missing. Instead, Defendants' witnesses testified to the custom and practice for collecting and processing grievances in the housing units but did not otherwise shed light on the availability of the grievance process for Plaintiff. Counselor Glenn testified that it was possible that Plaintiff had submitted grievances related to the claims in this case, but he could not recall. Hussung vaguely recalled Plaintiff, could not recall if he was Plaintiff's counselor in early March 2021, and did not recall Plaintiff

---

[2] The parties dispute whether evidence about grievances that were allegedly thrown out around this time is relevant given the allegations in the operative complaint about Plaintiff's underlying claims. As this Court outlined in its prior ruling on this subject, Dkt. 113, Defendants argue that Plaintiff's operative complaint alleges conduct occurring in September 2021. In contrast, Plaintiff points to his allegation that Defendant Mershon told him that Defendant Carpenter had delayed making an outside referral because she was tired of his grievances. According to Plaintiff, this conversation took place in September 2021, but Defendant Carpenter's alleged retaliation took place around February 2021, and he became aware of it at that time. As to the timing of Defendant Mershon's alleged death threat, the complaint does not have a date; however, Plaintiff states that the alleged death threat also happened around February 2021.

"An allegation in a complaint is a judicial admission that can be used against the plaintiff." *Moran v. Calumet City*, 54 F.4th 483, 493-94 (7th Cir. 2022). But here there is no admission. Instead, there is an ambiguous statement that Plaintiff subsequently clarified during proceedings concerning his proposed witnesses by saying that the alleged retaliation and death threat happened around February 2021. The Court thus allowed Plaintiff to testify about his efforts to exhaust his claims against Defendants in late February or early March 2021. Because defense counsel simply repeated previously rejected arguments about timing in her closing argument, the Court declines to revisit its ruling concerning the appropriate timeframe.

complaining about missing grievances. Neither Glenn nor Hussung contradicted Plaintiff's version of events.

This leaves Plaintiff's testimony that he submitted at least two grievances in the grievance box on March 1-4 2021, in accordance with Dixon's grievance procedures that correspond to his claims in this case, and that those grievances went missing. Defense counsel did not cross-examine Plaintiff and thus did not elicit any testimony that would have called his version of events into question. Similarly, defense counsel declined to question Counselor Hussung, whose lack of recall, while credible, does not contradict Plaintiff's version of events. Moreover, when Plaintiff brought the issue of his missing grievances to the attention of Dixon officials, Glenn confirmed that Dixon did not investigate the issue, explaining that he denied Plaintiff's March 18, 2021 grievance because prisoners could not grieve the grievance process.

Defendants' focus at the hearing and in their prehearing submissions was that the record did not contain grievances corresponding to the claims in his complaint. *See* Dkts. 59, 62. By focusing on Plaintiff's failure to complete the grievance process, which remained undisputed both before and after the hearings, Defendants failed to address whether an administrative remedy was available to Plaintiff for purposes of exhaustion. *See Dole*, 438 F.3d at 809 (stating that a prison officials' failure to respond to a properly filed grievance renders the grievance process unavailable); *see also Peoples v. Vallala*, No. 3:18-CV-2168-MAB, 2020 WL 917210, at *1 (S.D. Ill. Feb. 26, 2020) (denying defendant's motion for summary judgment based on exhaustion because "the onus [was] first on Defendant to provide evidence that Plaintiff did not submit any grievances" so his focus on the plaintiff's failure to produce grievances was unavailing). It is Defendants' "burden to prove that [Plaintiff] did not file a grievance, not [Plaintiff's] burden to prove that he did." *Bolden v. Mezo*, No. 22-1571, 2023 WL 4488861, at *1 (7th Cir. July 12, 2023) (unreported order) (citation omitted).

Additionally, this is not a case where after failing to receive a response to his grievances, Plaintiff abandoned the grievance process. Plaintiff did not "simply sit on his hands and abandon the grievance process when he receives no response." *See Salley v. Parker*, No. 18-CV-5700, 2020 WL 4736412, at *9 (N.D. Ill. Aug. 14, 2020). "[A]n inmate may not proceed directly to the courts when he does not receive an immediate response to his grievance; ... he must follow up with prison authorities, especially if he is familiar with the grievance process and knows to expect a response within a certain time frame." *Figueroa v. Corr. Officer Mason*, No. 14 C 9238, 2016 WL 5477528, at *3 (N.D. Ill. Sept. 29, 2016) (internal quotation marks and citation omitted). Plaintiff was familiar with the grievance process. Accordingly, when he did not hear back on the grievances he submitted, he filed a grievance on March 18, 2021 about those missing grievances. In that grievance, Plaintiff requested camera footage for the specific days that he submitted his grievances to establish that he placed them in the grievance box. Again, that grievance was denied not because it was investigated and found to be untrue. Instead, Plaintiff's grievance was denied because the counselor found that Plaintiff could not grieve the grievance process.

Based on the evidence presented at the hearings, the Court finds that Defendants have not met their burden of proof to show, by a preponderance of the evidence, that the grievance process

was available to Plaintiff as it relates to the claims in this case. Therefore, it is this Court's report and recommendation that the case be allowed to proceed.

### IV. Conclusion

For the reasons stated above, it is the Court's report and recommendation that Defendants' request for dismissal of the complaint for failure to exhaust administrative remedies be denied. Any objection to this report and recommendation must be filed by November 28, 2023. *See* Fed. R. Civ. P. 72(b). The failure to file a timely objection may result in the waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989).

Date: November 14, 2023        By:     *Lisa A. J.*
                                        Lisa A. Jensen
                                        United States Magistrate Judge