## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Nirin Walls (R49110), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21 C 50418 |
| v. | ) | |
| | ) | Hon. Iain D. Johnston |
| Kristina Mershon, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This lawsuit concerns a claim by Illinois prisoner Nirin Walls that care for his urological condition was wrongfully delayed in violation of the Eighth Amendment. His allegations about his care were scattershot but largely seemed to focus on the amount of time that elapsed before he was seen by a urologist following his arrival at the Dixon Correctional Center. Walls attributed the delay to Health Care Unit Administrator Carpenter. He also alleged that Nurse Practitioner Mershon threatened to kill him if he named her as a defendant to a lawsuit. Based on the alleged facts and the generous construction afforded *pro se* pleadings, the Court allowed claims against Carpenter and Mershon to proceed past screening. *See* Dkt. 26, May 9, 2022 Order.

Carpenter's and Mershon's motions for summary judgment are before the Court. Because Walls produced insufficient evidence substantiating his allegations, the motions are granted.

### Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The purpose of Local Rule 56.1 is to make the summary judgment process less burdensome on the Court by requiring the parties to nail down the relevant facts and the way they propose to support them. *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012).

Local Rule 56.1 requires the moving party to submit a motion, supporting memorandum of law, and statement of material facts accompanied by cited evidentiary material. N.D. Ill. L.R. 56.1(a), (d). The opposing party then must respond to the moving party's motion and statement of facts. N.D. Ill. L.R. 56.1(b), (e).

The opposing party's response "must consist of numbered paragraphs corresponding to the numbered paragraphs in the [movant's] statement[.]" N.D. Ill. L.R. 56.1(e)(1). "Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." N.D. Ill. L.R. 56.1(e)(2). In addition, the opposing party "must cite specific evidentiary material that controverts the fact[.]" N.D. Ill. L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). Facts asserted by the moving party "may be deemed admitted if not controverted with specific citations to evidentiary material." N.D. Ill. L.R. 56.1(e)(3).

If the opposing party wants the Court to consider facts not set forth in the movant's statement of facts or properly presented in response to the movant's facts, the opposing party must submit a separate "statement of additional material facts." N.D. Ill. L.R. 56.1(b)(3). The opposing party's statement of additional material facts "must consist of concise numbered paragraphs," and "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." N.D. Ill. L.R. 56.1(d)(1), (2). "The court may disregard any asserted fact that is not supported with such a citation." N.D. Ill. L.R. 56.1(d)(2). The Court also will not consider any "new facts" that appear only in response to the movant's statement of facts and "are not fairly responsive" to the movant's asserted fact. *See* N.D. Ill. L.R. 56.1(e)(2).

This Court requires strict compliance with Local Rule 56.1 from all parties. *Aska v. Yingling*, No. 3:23-cv-50004, 2026 WL 179545, at *1-7 (N.D. Ill. Jan. 23, 2026) (Johnston, J.); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) (allowing district court to strictly enforce its local rules). Substantial compliance is not enough. *See Ammons v. Aramark Uniform Servs.,* 368 F.3d 809, 817 (7th Cir. 2004). A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See, e.g., Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Walls is proceeding without counsel. Previously, the Court assigned experienced and well-respected counsel to represent Walls, but, upon a review of the material, counsel concluded that he could not proceed with the litigation in a manner consistent with his professional responsibilities. Dkt. 76. Because Walls is proceeding without counsel, Defendants served him with a "Local Rule 56.2 Notice to *Pro Se* Litigant Opposing Summary Judgment," setting forth the procedures for opposing summary judgment and explaining that Walls "must file, as separate documents" a response to Defendants' statement of facts, a statement of additional facts, evidentiary material, and a memorandum of law. *See* Dkt. 213, 224. Defendants also provided Walls with the text of Federal Rule of Civil Procedure 56 and Local Rule 56.1 as well as guidance on countering their affidavits. *See* Dkt. 211, 212, 214, 221-223. Additionally, at the prefiling conference the Court full explained the summary judgment process, as well as Local Rule 56.1, to Walls in detail. Dkt. 206.

Even so, Walls's submissions do not comply with Local Rule 56.1 for the most part. For example, he did not respond to each of Mershon's facts, *see* Dkt. 233, pg. 9-12 (Pl. Resp. to Mershon's Stmt. of Facts), and where he responded to Defendants' facts, his objections often lack

3

citation to evidence refuting the fact, *see id.*; Dkt. 231,[1] pg. 15-20 (Pl. Resp. to Carpenter's Stmt. of Facts); Dkt. 234, pg. 15-16. Defendants' facts are deemed admitted where Walls's did not dispute the fact in compliance with Local Rule 56.1. *See* N.D. Ill. L.R. 56.1(e)(3).

Walls also did not submit a separate statement of additional facts even though facts appear throughout his submissions that were not identified in Defendants' statements of facts. Notably, Walls's responses to Defendants' statements of facts are buried in documents on which he wrote the word "Affidavit." *See* Dkt. 231, 233, 234. But those "Affidavit[s]" are neither affidavits nor declarations. *See Zavala-Alvarez v. Darbar Mgmt., Inc.*, 617 F. Supp. 3d 870, 885-86 (N.D. Ill. 2022) (Seeger, J.) (discussing requirements of affidavits and declarations). Instead, the documents are briefs in opposition to Defendants' motions for summary judgment, complete with legal argument, citations to case law, and requests for the Court to deny Defendants' motions. The documents have no evidentiary value. *See id.* The documents also do not comply with the procedures established by Local Rule 56.1 for presenting new facts in opposition to summary judgment. Thus, the Court will not consider additional facts identified in the "Affidavit[s]" unless a new fact appears in Walls's response to Defendants' statement of facts, is "fairly responsive" to admitting or denying the fact, and is supported by specific citation to evidentiary material.

With the above standards in mind, the Court recounts the facts established by the parties' submissions, noting that it has included material from the evidence cited by the parties to the extent necessary to accurately characterize the facts.

---

[1]The document at Dkt. 231 was docketed as Walls's response to Defendant Mershon's motion for summary judgment. The document is, in fact, one of two nearly identical responses to Defendant Carpenter's motion for summary judgment. *See* Dkt. 231, 234. Walls's response to Mershon's motion appears at Dkt. 233 and was docketed simply as an "Affidavit."

## Background

Plaintiff Nirin Walls is an Illinois prisoner who was incarcerated at the Dixon Correctional Center at the time of the events giving rise to this lawsuit. He arrived at Dixon on February 2, 2021. Dkt. 219, Def. Carpenter[2] Stmt. of Undisputed Material Facts (CSOF) ¶ 3; Dkt. 209, Def. Mershon Stmt. of Material Facts (MSOF) ¶ 1. Before his transfer to Dixon, Walls was incarcerated at the Centralia Correctional Center. *See* CSOF ¶¶ 1, 2. While at Centralia, a doctor referred Walls to "urology" on a non-urgent basis for "chronic hematuria, and dysuria and discharge." CSOF ¶ 1; Dkt. 219-1 at 000975. Walls also received a referral for a renal ultrasound. CSOF ¶ 2. The ultrasound was completed on February 3, 2021. CSOF ¶ 6.

Defendant Monica Carpenter was the Interim Assigned Health Care Unit Administrator at Dixon from February 2021 to February 2022. CSOF ¶ 4. Carpenter attested in support of her motion for summary judgment that, as the Health Care Unit Administrator, she did not routinely provide treatment or medical care to inmates. CSOF ¶ 37; Dkt. 219-2, Fuller née Carpenter Decl. ¶ 4. She also is not authorized to schedule or reschedule appointments with outside medical providers. CSOF ¶ 23. It is Carpenter's understanding that Dixon's writ office, in coordination with the outside provider, is solely responsible for scheduling outside medical appointments. CSOF ¶ 26. Carpenter has no authority to order an outside hospital to schedule an appointment, to decide when a prisoner will be seen at an outside hospital, or to expedite an appointment. CSOF ¶ 25. Likewise, she has no authority to order the writ office to do anything. CSOF ¶ 27.

---

[2]Defendant Carpenter is now known as Monica Fuller. *See* Dkt. 219-2. However, the Court refers to her by the surname Carpenter for present purposes because that is the name she was known by during the events at issue in this lawsuit. *See id.* ¶ 2.

Carpenter did not treat Walls or provide medical care to him; her involvement with Walls's care was purely administrative. *See* CSOF ¶ 36. On February 2, 2021, Carpenter completed a Medical Special Services Referral and Report referring Walls to "UIC Urology" for an "Evaluation." CSOF ¶ 5; Dkt. 219-1 at 000953. She wrote as the rationale for the referral: "Offender seen at Centralia by urology in Nov. 2020 with recommended follow-up. Offender will need to be established @ UIC." *Id.*

Referrals are sent to Dixon's writ office, and the writ office schedules the appointment with the outside provider. CSOF ¶ 10. A note in Walls's chart dated March 9, 2021, reflects: "writ office called and pt is approved for urological referral for evaluation." CSOF ¶ 9; Dkt. 219-1 at 000927.

On April 13, 2021, Walls was seen by one of Dixon's nurses for complaints about a headache. CSOF ¶ 12. Notes from the appointment show that Walls asked about "outside urology f/u." *Id.*; Dkt. 219-1 at 000921-922. It appears that the nurse contacted the writ office, which reported: "pt has been approved but has no set appointment." *Id.* The nurse also noted that "pt has multiple questions regarding urology consult that RN can't answer; will place on Dr. Zahtz [illegible] for f/u." *Id.* Six days later—on April 19, 2021—Walls submitted a sick call request "regarding same issues that were discussed between pt & this RN on 4-13-21." CSOF ¶ 14; Dkt. 219-1 at 000921-922. Walls was scheduled to see Dr. Zahtz the following day. *Id.*

Defendant Carpenter rescheduled Walls's April 20, 2021 appointment with Dr. Zahtz "at the request of the Health Care Unit." CSOF ¶ 15. The progress note memorializing the rescheduled appointment is brief and not necessarily self-explanatory. *See* Dkt. 219-1 at 000913. To assist in understanding the entry, Carpenter attested that she has personal knowledge of the abbreviations used in the note. *See* Dkt. 219-2, M. Fuller née Carpenter Decl. ¶ 10. She then explained that the

6

entry includes a stamp where the letters "MD" are circled on the Provider Line. CSOF ¶ 16. The Provider Line "indicates who [the] note is being referred to." *Id.* The letters "MD" indicate that the note was referred to "the medical director, Dr. Zahtz." *Id.* The line following "CC" is for the prisoner's "current complaint and directs the provider to what issues or concerns are to be addressed by the provider." CSOF ¶ 19. The words "writ questions/HA meds" following "CC" indicate that Walls was referred to Dr. Zahtz for questions about the scheduling of his urology appointment and headache medication. CSOF ¶ 20. Carpenter's signature follows the handwritten words "Appointment Rescheduled." CSOF ¶ 15; Dkt. 219-1 at 000913. The note does not show the date of the rescheduled appointment, *see id.*, but a progress note dated April 26, 2021, reflects that a follow-up appointment with the nurse practitioner had been scheduled to address Walls's seizure medication and writ concerns, CSOF ¶ 29; Dkt. 219-1 at 000912.

On August 17, 2021, Walls was seen at sick call for complaints of back pain. CSOF ¶ 32. The nurse who saw Walls noted, "UIC appt scheduled for Nov. 2021 per HCUA." *Id.*; Dkt. 219-1 at 000874-875.

Walls saw a urologist at UIC on November 10, 2021. CSOF ¶ 34; Dkt. 219-1 at 000945-953). According to the urologist's report, Walls presented with microhematuria,[3] posterior lateral scrotal tenderness, and urethral discharge. *See* Dkt. 219-1 at 000947. The urologist recommended "ice, elevation, compression, rest"; a 28-day course of antibiotics; lab work; and an STI panel. He also recommended a cystoscopy. *Id.* In a handwritten note, the urologist wrote: "possible epididymitis w/poor tx in past[.]" *See* Dkt. 231 at pg. 19, Pl. Resp. to CSOF ¶ 34; Dkt. 219-1 at

---

[3]Microhematuria is small amounts of blood in the urine that is undetectable with the naked eye. *See* Cleveland Clinic, Microhematuria, located at https://my.clevelandclinic.org/health/diseases/22379-microhematuria (last visited Jan. 21, 2026).

000953. On December 8, 2021, a cystoscopy and ureter catheter were authorized for Walls. CSOF ¶ 35. As of June 28, 2024, Walls continued to experience unresolved urological problems despite ongoing care. CSOF ¶ 44; *see* Dkt. 231 at pg. 20, Pl. Resp. to CSOF ¶¶ 44, 45.

Walls explained at his deposition that he sued Defendant Carpenter because he believed that she rescheduled and delayed his writ appointment at UIC. CSOF ¶ 38. He clarified in his response to Carpenter's statement of facts that he blames Carpenter for the delayed appointment because she rescheduled his appointment to see Dr. Zahtz "about urinology issues" and states that he never saw Dr. Zahtz. *See* Dkt. 231 at pg. 20, Pl. Resp. to CSOF ¶ 38.

Walls's claim against Nurse Practitioner Kristina Mershon rests on different facts and a different theory of liability. According to Walls, Mershon threatened to kill him. MSOF ¶ 4. Walls testified during his deposition that the purported death threat occurred sometime in February 2021 or March 2021 when he and Mershon were discussing his medical issues and transfer from Centralia. MSOF ¶¶ 4, 5; Dkt. 209-1, Walls Dep. 52:19-53:3; 57:23-59:5. Walls told Mershon that, if Dixon staff did not help him, he was going to file a lawsuit naming them and the Centralia staff as defendants. MSOF ¶ 5; Walls Dep. 52:19-53:3. Mershon's purported threat followed. *See* MSOF ¶¶ 4, 5. Walls, however, could not recall the exact date of the threat because, he said, his grievances containing the date purportedly were "missing." MSOF ¶ 4; Walls Dep. 57:23-59:5. Walls also could not remember the date of his first appointment with Mershon because, again, his grievances containing the date were "missing." *Id.*; Walls Dep. 43:3-7. Walls testified, though, that he and Mershon were alone in her office when she made the purported threat; no one else was present. MSOF ¶ 26; Walls Dep. 61:13-15.

Mershon denies threatening to kill Walls. MSOF ¶¶ 22-24, 30. Mershon is a nurse practitioner licensed to practice in Illinois. MSOF ¶ 2. Her duties as a nurse practitioner at Dixon are to provide medical care and treatment to prisoners. MSOF ¶ 3. Typically, prisoners obtain medical care by submitting a written request to the healthcare unit. *Id.* A sick call nurse then triages the prisoner and, if the prisoner's medical issue cannot be addressed by the nurse, the nurse puts the prisoner on a list to be scheduled for an appointment with a provider. *Id.*

Mershon attested in support of her motion for summary judgment that she does not recall personally interacting with Walls during the months of February 2021 or March 2021. *See* MSOF ¶ 4; Dkt. 209-2, Mershon Decl. ¶¶ 4, 21.[4] She also attested, if she had had an appointment with Walls, she would have made a record at the time of the appointment and submitted it to the nursing staff for filing in Walls's medical file. *Id.* She reviewed Walls's medical records and did not see any appointments between herself and Walls during February 2021 or March 2021. *See id.*

The first record of any interaction between Mershon and Walls appears in a progress note dated April 8, 2021. *See* MSOF ¶ 6. Walls reported during his appointment with Mershon that his seizure medication "isn't helping" and that he still had "little seizures." *Id.* Based on Walls's reports and Mershon's examination, Mershon developed a plan to address Walls's concerns about his seizure medications. *Id.* Mershon also followed up regularly with Walls through the end of April 2021. *See* MSOF ¶¶ 7-12. Thereafter, Mershon had intermittent contact with Walls through October 4, 2021, to address his various health issues. *See* MSOF ¶¶ 13-20. Mershon attested that she never attempted to harm or kill Walls. MSOF ¶ 24.

---

[4]Mershon cited to "Decl. Ex. 17" as some support for the facts at paragraph 4 of her Statement of Facts. She identified Exhibit 17 as Call Pass Logs IDOC 002326-2332, *see* Dkt. 209-2, Mershon Decl. ¶ 21, but did not file Exhibit 17 with her Declaration. Even so, the omission is not fatal given that Mershon also cited her Declaration and could testify to her recollection of events.

Walls initiated this lawsuit in the Southern District of Illinois in October 2021. *See* Dkt. 1, pg. 28 (complaint dated 10/5/21). Because the complaint concerned medical care at both Dixon and Centralia, it was severed into two cases: this case, *Walls v. Mershon*, No. 21-cv-50418 (N.D. Ill.) and *Walls v. Jeffreys*, No. 21-cv-01369-SPM (S.D. Ill.). This Court subsequently screened the complaint under 28 U.S.C. § 1915A and limited the case to claims stemming from the medical care Walls received at Dixon for his urological condition. *See* Dkt. 26, May 9, 2022 Order. Two claims survived screening: (1) a claim under the Eighth Amendment stemming from Walls's allegation that Health Care Unit Administrator Carpenter intentionally delayed sending him to a urologist because she was "tired" of his grievances; and (2) a First Amendment retaliation claim against Mershon stemming from Walls's allegation that Mershon threatened to kill him if he sued her. *Id.* All other claims and defendants were dismissed. *Id.*

Defendants Carpenter and Mershon now seek summary judgment in their favor and against Walls. Dkt. 208-214 (Mershon); Dkt. 218-224 (Carpenter).

## DISCUSSION

Summary judgment is warranted where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A disputed issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. Unsupported facts and bald statements lacking factual support are insufficient to defeat summary judgment.

10

*Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). This means that the opposing party "may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits[.]" *Id.* (quoting *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001)). The opposing party "must go beyond the pleadings and support its contentions with proper documentary evidence." *Id.* The opposing party will defeat summary judgment only if he makes "a sufficient showing on every element of his case on which he bears the burden of proof[.]" *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019).

The Court considers relevant, properly supported evidence in the light most favorable to the opposing party. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021). The Court "refrain[s] from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). The Court draws "reasonable inferences from the evidence" in the opposing party's favor, but not speculative inferences. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016).

A.     **Eighth Amendment Claim Against Defendant Carpenter**

Defendant Carpenter argues that she is entitled to summary judgment because a reasonable jury could not conclude that she consciously disregarded a serious risk to Walls's health. Dkt. 220, pg. 1. Carpenter points to the fact that she facilitated Walls's referral to a urologist but had no authority to schedule an appointment at an outside facility. *Id.* She therefore asserts that she did not cause any delay in Walls being seen by a urologist. *Id.*, pg. 8-12. Carpenter also argues that Walls cannot establish the level of culpability required to hold her liable under the Eighth Amendment, *id.*, pg. 4-8, and that there is no evidence that any delay attributed to her caused Walls a compensable harm, *id.*, pg. 11-12.

11

The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including grossly inadequate medical care." *Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019) (citations and quotation marks omitted). To prevail on a claim that his medical care violated the Eighth Amendment, a prisoner must be able to prove that: (1) he suffered from an objectively serious medical condition and (2) the defendant knew about and was deliberately indifferent to the condition. *See id.* (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)).

Carpenter concedes that Walls can establish that he suffered from a serious medical condition. Dkt. 220, pg. 3. She challenges only Walls's ability to prove that she acted with deliberate indifference to a serious medical need. *Id.*, pg. 4-8.

The deliberate indifference inquiry looks to the defendant's "state of mind[.]" *Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). To be held liable for an Eighth Amendment violation, a plaintiff "must provide evidence" that the defendant "actually knew of and disregarded a substantial risk of harm." *Lockett*, 937 F.3d at 1023 (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)). Deliberate indifference requires a "subjective state of mind akin to criminal recklessness" and must be assessed in light of the "totality of care." *Owens v Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019); *see also Boykins v. Wilson*, No. 23-3027, 2025 WL 48413 at *2 (7th Cir. Jan. 8, 2025) (citing *Davis v. Kayira*, 938 F.3d 910, 915 (7th Cir. 2019)).

Evidence properly before the Court establishes that Walls arrived at Dixon on February 2, 2021, with a referral for an ultrasound and a non-urgent referral to "urology." The ultrasound was performed at Dixon the next day, and Carpenter immediately completed a form referring Walls to

12

"UIC Urology" for evaluation. A note in Walls's medical records reflects that the writ office received the referral, and the referral had been approved by no later than March 9, 2021.

When Walls had questions about the urology appointment, a nurse referred him to Dixon's medical director, Dr. Zahtz. An appointment with Dr. Zahtz was scheduled for April 20, 2021, but the appointment was "rescheduled" by Carpenter for an unspecified reason. Walls also says that he never saw Dr. Zahtz, *see* Dkt. 231 at pg. 16-17, Pl. Resp. to CSOF ¶ 12, which appears to be supported by the record insofar as the record lacks reference to a subsequent appointment with the doctor. Even so, the fact that Walls might not have seen Dr. Zahtz on or after April 20, 2021, is not enough to create a triable issue of fact on whether Carpenter was deliberately indifferent to Walls's non-urgent need to be evaluated by a urologist, because the record reflects that Walls was referred to the nurse practitioner for questions about his writ and there is no evidence that his missed appointment with Dr. Zahtz had an adverse impact on the scheduling of his appointment at UIC. *See Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) ("To avoid summary judgment [the nonmovant] must . . . produce more than a scintilla of evidence to support his position.").

Importantly, the record contains no evidence supporting an inference that Carpenter rescheduled Walls's appointment with the UIC urologist. Evidence shows, instead, that the writ office was aware by no later than March 9, 2021, of the request to have Walls evaluated by a urologist. Carpenter had no authority to influence the scheduling of the appointment at that point. She cannot be held liable under section 1983 for a scheduling function over which she had no control. *See, e.g., Turner v. Paul*, 953 F.3d 1011, 1016 (7th Cir. 2020) (concluding that defendants who had no control over scheduling appointments with outside provider could not be held liable under section 1983 for failing to schedule appointment or failing to "nag" the individuals

13

responsible for scheduling appointments); *see also Lyke v. Lank*, No. 21 C 50066, 2024 WL 3904630, at *7 (N.D. Ill. Aug. 22, 2024) (Johnston, J.) (explaining that plaintiff cannot establish deliberate indifference without evidence that defendant had control over scheduling delayed appointment); *Wells v. Dominguez*, No. 3:17-cv-50087, 2022 WL 17718421, at *6 (N.D. Ill. Dec. 15, 2022) (Johnston, J.) (explaining that defendant can be held liable for delays in scheduling only if evidence shows defendant had control over the circumstances that caused delays).

Walls disagrees. He argues that Carpenter's knowledge of a scheduled appointment with UIC (recorded in a nurse's note dated August 17, 2021) shows that Carpenter had "a say so" over his "urology [sic] care."[5] *See* Dkt. 231, Pl. Resp. to Carpenter MSJ, pg. 7. But Carpenter's ability to identify that Walls's appointment at UIC had been scheduled does not show that she had any influence over outside appointment scheduling. It shows only that Carpenter was able to verify through some method that the appointment had been scheduled. The IDOC Administrative Directive cited by Walls (which is not properly before the Court as a new fact) also does not suggest, as Walls contends, that Carpenter was required to unilaterally follow-up five days after submitting the urology referral to avoid running afoul of the Constitution. *See* Dkt. 231, Pl. Resp. to Carpenter MSJ, pg. 8 (citing IDOC A.D. 04.03.103); Dkt. 235, Carpenter Reply, pg. 6-7; *see also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (explaining that section 1983 provides a remedy for constitutional violations, not violations of state law or departmental regulations).

---

[5] Walls attempts to expand the scope of this lawsuit to Carpenter's purported decision to "allow[]" his transfer from Dixon to the Joliet Treatment Center in 2022, *see* Dkt. 231, Pl. Resp. to Carpenter MSJ, pg. 7, 18, and a claim that Carpenter threatened to delay his medical care if he did not stop filing grievances, *id.*, pg. 13. Walls's assertions are unsupported by evidence and are beyond the scope of this lawsuit, as defined by the May 9, 2022 screening order.

It is undisputed that Walls did not see a urologist at UIC until November 10, 2021, which means that Walls was not sent for an outside evaluation of his urological condition until nine months after his arrival at Dixon. *See* Dkt. 231, Pl. Resp. to Carpenter MSJ, pg. 4. He did not remain without care, though. Evidence shows that Walls received regular medical care at Dixon from February 2021 to October 2021, including the ultrasound and lab work recommended by the referring physician at Centralia. Thus, even if the Court considers that a nine-month delay in completing a referral to an outside specialist *could* rise to the level of deliberate indifference, the evidence in this case—a non-urgent referral to an outside provider for an evaluation coupled with regular in-house care—does not suggest that Carpenter's failure to ensure prompt scheduling of the UIC appointment constitutes deliberate indifference. Rather, Carpenter was performing a purely administrative function when she sent the referral to the writ office, so she was allowed to rely on the medical professionals who were treating Walls to determine whether an evaluation in November 2021 was adequate to address his medical needs. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (explaining that non-medical administrator is entitled to rely on judgment of treating providers).

A key issue at risk of getting lost in the parties' arguments is that evidence properly before the Court shows only that Carpenter rescheduled Walls's April 20, 2021 appointment with Dr. Zahtz. Walls submitted no evidence that any delay caused by his failure to be seen by Dr. Zahtz on or after April 20, 2021 resulted in a constitutional injury. *See Petties*, 836 F.3d at 730-731 ("To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must [] provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain."). Walls simply suggests that the missed appointment adversely effected the

timing of his appointment at UIC. *See* Dkt. 231, Pl. Resp. to Carpenter MSJ, pg. 12. He also speculates that Dr. Zahtz would have sent him to the emergency room. *Id.* Suggestion and speculation, however, are not enough to defeat summary judgment. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016) (explaining that mere speculation or conjecture will not defeat a summary judgment motion). Carpenter therefore is entitled to summary judgment.

## B. First Amendment Claim Against Defendant Mershon

Defendant Mershon argues that she is entitled to summary judgment because no reasonable jury could conclude that she violated Walls's First Amendment rights. *See* Dkt. 210, Mershon MSJ, pg. 2-3. She asserts two points (1) Walls's threat to sue her is not protected activity; *id.*, pg. 9-10; and (2) Walls presented no evidence that she threatened to kill him, *id.*, pg. 4-9.

To prevail on a First Amendment retaliation claim against Mershon, Walls had to come forward with evidence that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) a causal connection between the two." *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Walls's claim fails on prongs one and two of the analysis, rendering the third prong moot.

This Court has found no precedential authority holding that a prisoner's threat to file a lawsuit against prison personnel is protected by the First Amendment. *See Reed v. Bowen*, 769 F. App'x 365, 370 (7th Cir. 2019) ("We have not ruled that threatening to file a lawsuit is protected activity."); *Clay v. Overmyer*, No. 14-103 Erie, 2015 WL 630379, at *4 (W.D. Pa. Feb. 13, 2025) (explaining that, in prison context, "the threat of the filing of a lawsuit has not been held to be constitutionally protected conduct") (collecting cases); *see also Bridges*, 557 F.3d at 555 ("it seems

16

implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance") (emphasis in original). And, as here, when the preemptive threat of litigation is made to intimidate prison officials, courts routinely decline to extend First Amendment protection to the threat. *See Piontek v. Onjukka*, No. 24-cv-1558-pp, 2025 WL 370114, at *3 (E.D. Wis. Jan. 31, 2025) (vacated on other grounds) (finding prisoner's threat to file lawsuit if he did not receive preferential dental care was not protected activity); *Anderson v. Sundquist*, 1 F. Supp. 2d 828, 834 (W.D. Tenn. 1998) ("an inmate does not enjoy a First Amendment right to attempt to intimidate prison employees by threats of lawsuits"); *see also Ortiz v. Baird*, No. 10-1753, 2013 WL 1290555, at *8 (W.D. Pa. Feb. 15, 2013) (finding that threat to file grievance was not protected).

Walls presented no evidence suggesting that his threat to sue Mershon was anything more than an attempt to coerce her into providing the medical care he desired. Consequently, it is not entitled to First Amendment protection. *See Watkins*, 599 F.3d at 797 (explaining that speech inconsistent with a prisoner's status as a prisoner is not subject to First Amendment protection).

Walls also improperly attempts to alter his recollection of events by asserting in an unsworn document that he now remembers the date of Mershon's purported death threat. *See Zavala-Alvarez*, 617 F. Supp. 3d at 886 ("[a]n unsworn statement . . . has no evidentiary value"). Walls was asked during discovery to identify the date on which Mershon made the purported threat to "kill" him. He declined to do so even though the date of a bonafide death threat is something a person would reasonably be expected to remember especially where, as here, the threat purportedly occurred just eight months before Walls initiated this lawsuit in October 2021. Walls did provide some details, though. He testified during his deposition that the threat occurred sometime in February 2021 or March 2021 while he and Mershon were discussing his medical issues and

transfer from Centralia. Dkt. 209-1 Walls Dep. 52:19-53:3, 57:23-59:5. He also specified that the conversation took place while he and Mershon were alone in her office. Walls Dep. 61:13-15.

In response to Mershon's motion for summary judgment, Walls first contends (consistent with his deposition testimony) that he cannot identify the exact date of the purported threat. Dkt. 233, Pl. Resp. to Mershon MSJ, pg. 3. Two pages later, he then changes course and identifies the date of the threat as February 8, 2021. *Id.*, pg. 5.

In support of his new-found knowledge, Walls cites a note in his medical records referencing lab work that was performed on February 8, 2021, by someone other than Mershon. *Id.*, pg. 5, 11. He then baldly asserts that he "believe blood was takened that day" and "every time Plaintiff blood was takened drawn Mershon was there." *Id.*, pg. 10 (verbatim). It does not reasonably follow, though, that he and Mershon were alone in her office on February 8, 2021, as Walls testified at his deposition. Walls therefore is not entitled to an inference that the threat occurred on February 8, 2021. *See Whitaker v. Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025) (explaining that party opposing summary judgment "is entitled only to *reasonable* inferences") (emphasis in original).

That said, it nevertheless is undisputed that Walls has maintained throughout the course of this litigation that Mershon threatened to "kill" him if he named her as a defendant in a lawsuit. He could testify to the fact, but it is scant evidence that the threat occurred given that the record contains no documentation showing any interaction between Walls and Mershon during the time Walls says the threat occurred. *See Anderson*, 477 U.S. at 251 (explaining that a mere "scintilla of evidence in support of a plaintiff's position" will not defeat summary judgment); *Whitaker*, 144

18

F.4th at 917 ("It is not enough for the non-moving party to raise a metaphysical doubt as to the material facts.") (internal quotation marks and citation omitted).

Evidence properly before the Court—as opposed to hearsay, speculation, and unsworn assertions by Walls, *see* Dkt. 233, Pl. Resp. to Mershon MSJ, pg. 4-8—also does not suggest that any utterance by Mershon was a bonafide "death threat" and not simply a poor choice of words. Walls remains alive, and there is no evidence that objectively suggests Mershon attempted to harm him. Thus, even if the Court accepts for present purposes that Mershon told Walls she would "kill" him if he sued her, Walls's evidence falls short of establishing that the words used by Mershon rose to the level of a deprivation that would likely deter First Amendment activity. *See, e.g., Foster v. Powell*, 402 F. App'x 142, 143 (7th Cir. 2010) (affirming dismissal of retaliation claim as a matter of law where detainee alleged that shift commander said to a detainee, "Top Secret, if I told you, I'd have to kill you," and then threatened, after detainee filed a grievance, to make detainee "very uncomfortable" if he did not "back off," reasoning that officer's isolated comments "could not have deterred a reasonable person from exercising his First Amendment rights" where detainee continued to file grievances and suffered no adverse action).

Accordingly, Mershon is entitled to summary judgment. *See Whitaker*, 144 F.4th at 916 (explaining that an issue for trial is "genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party") (citing *Anderson*, 477 U.S. at 248).

19

**<u>CONCLUSION</u>**

Defendants Carpenter and Mershon are entitled to summary judgment for the reasons discussed above. The Court therefore grants Defendants' motions for summary judgment (Dkt. 208, 218). Final judgment will be entered in Defendants' favor. This case is closed.


Date:   January 27, 2026          By:   _____

Iain D. Johnston
United States District Judge